CLOSED

# U.S. District Court
## District of Maryland (Baltimore)
## CRIMINAL DOCKET FOR CASE #: 1:09-cr-00512-JFM-3
## Internal Use Only

Case title: USA v. Corey et al

Date Filed: 09/24/2009
Date Terminated: 05/18/2010

Assigned to: Judge J. Frederick Motz

**Defendant (3)**

| | |
|---|---|
| **Richard Johnson**<br>*TERMINATED: 05/18/2010*<br>*also known as*<br>Little Richy<br>*TERMINATED: 05/18/2010* | represented by **William B Purpura , Jr**<br>Law Office of William B Purpura<br>Eight E Mulberry St<br>Baltimore, MD 21202<br>14107278550<br>Fax: 14105769351<br>Email: wpurp@aol.com<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED*<br>*Designation: CJA Appointment* |

| **Pending Counts** | **Disposition** |
|---|---|
| 18:371 CONSPIRACY RELATED TO INTERSTATE PROSTITUTION<br>(1) | Imprisonment for a Term of 60 months as to Count 1; 120 as to Count 2; 121 months as to Counts 3,4 & 7, to run concurrent with each other for a total term of 121 months; Supervised Release for a term of 10 years as to each count to run concurrent with each other; Assessment $500.00 |
| 18:2421 INTERSTATE TRANSPORTATION FOR PROSTITUTION; 18:2 AIDING AND ABETTING<br>(2) | Imprisonment for a Term of 60 months as to Count 1; 120 as to Count 2; 121 months as to Counts 3,4 & 7, to run concurrent with each other for a total term of 121 months; Supervised Release for a term of 10 years as to each count to run concurrent with each other; Assessment $500.00 |
| 18:2422(a) ENTICEMENT; 18:2 AIDING AND ABETTING<br>(3) | Imprisonment for a Term of 60 months as to Count 1; 120 as to Count 2; 121 months as to Counts 3,4 & 7, to run concurrent with each other for a total term of 121 |

|  |  |
|---|---|
|  | months; Supervised Release for a term of 10 years as to each count to run concurrent with each other; Assessment $500.00 |
| 18:1591 SEX TRAFFICKING BY FORCE FRAUD AND COERCION; 18:2 AIDING AND ABETTING (4) | Imprisonment for a Term of 60 months as to Count 1; 120 as to Count 2; 121 months as to Counts 3,4 & 7, to run concurrent with each other for a total term of 121 months; Supervised Release for a term of 10 years as to each count to run concurrent with each other; Assessment $500.00 |
| 21:846 NARCOTICS CONSPIRACY (7) | Imprisonment for a Term of 60 months as to Count 1; 120 as to Count 2; 121 months as to Counts 3,4 & 7, to run concurrent with each other for a total term of 121 months; Supervised Release for a term of 10 years as to each count to run concurrent with each other; Assessment $500.00 |

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
|---|---|
| None |  |

**Highest Offense Level (Terminated)**

None

| **Complaints** | **Disposition** |
|---|---|
| None |  |

---

| **Plaintiff** | | |
|---|---|---|
| **USA** | represented by | **Debra Lynn Dwyer** |
|  |  | Office of the United States Attorney |
|  |  | 36 S Charles St Fourth Fl |
|  |  | Baltimore, MD 21201 |
|  |  | 14102094813 |
|  |  | Fax: 14109623124 |
|  |  | Email: Debbie.Dwyer@usdoj.gov |
|  |  | *LEAD ATTORNEY* |
|  |  | *ATTORNEY TO BE NOTICED* |
|  |  | **Solette Allison Magnelli** |

Office of the United States Attorney
36 S Charles St Fourth Fl
Baltimore, MD 21201
14102094867
Fax: 14109620716
Email:
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Rod J Rosenstein**
Office of the United States Attorney
Do Not Mail
Baltimore, MD 21201
14102094800
Email: rod.rosenstein@usdoj.gov

Email All Attorneys

Email All Attorneys and Additional Recipients

| Date Filed | # | Docket Text |
|---|---|---|
| 09/24/2009 | 1 | SEALED INDICTMENT as to Craig Allen Corey (1) count(s) 1, 2, 3, 4, 5, 6, 7, 8, Robert Harris (2) count(s) 1, 2, 3, 4, 7, Richard Johnson (3) count(s) 1, 2, 3, 4, 7, Jacob Tyler (4) count(s) 1, 2, 3, 7. (cags, Deputy Clerk) (Entered: 09/24/2009) |
| 09/24/2009 | 3 | MOTION and ORDER to Seal as to Craig Allen Corey, Robert Harris, Richard Johnson, Jacob Tyler.. Signed by Magistrate Judge Beth P. Gesner on 9/24/09. (egs, Deputy Clerk) (Entered: 09/24/2009) |
| 09/29/2009 | 13 | REQUEST AND ORDER to Unseal Indictment as to Craig Allen Corey, Robert Harris, Richard Johnson, Jacob Tyler.. Signed by Magistrate James K. Bredar on 9/29/2009. (egs, Deputy Clerk) (Entered: 09/30/2009) |
| 10/05/2009 |  | Arrest of Richard Johnson on 9/29/2009 in USDC Southern District of Ohio (Columbus). (eg, Deputy Clerk) Modified on 10/6/2009 (eg, Deputy Clerk). (Entered: 10/06/2009) |
| 10/05/2009 | 22 | Rule 5(c)(3) Documents Received from USDC Southern District of Ohio (Columbus) as to Richard Johnson (Attachments: # 1 Warrant Returned Executed, # 2 Waiver of Detention Hearing, # 3 Waiver of Rule 5, # 4 Order of Temporary Detention, # 5 Order of Detention Pending Trial, # 6 Order of Appointment of Counsel, # 7 docket sheet, # 8 cover letter)(eg, Deputy Clerk) (Entered: 10/06/2009) |
| 10/20/2009 | 🔒 26 | Initial Appearance as to Richard Johnson (Defendant informed of Rights.) held on 10/20/2009 before Magistrate Judge Susan K. Gauvey. (FTR Gold.) (std, Deputy Clerk) (Entered: 10/20/2009) |

| 10/20/2009 | 🔒 | 30 | CJA 23 Financial Affidavit by Richard Johnson (eg, Deputy Clerk) Modified on 10/21/2009 (eg, Deputy Clerk). (Entered: 10/21/2009) |
|---|---|---|---|
| 10/20/2009 | | 31 | ORDER OF TEMPORARY DETENTION Pending Hearing Pursuant To Bail Reform Act as to Richard Johnson. Signed by Magistrate Judge Susan K. Gauvey on 10/20/2009. (eg, Deputy Clerk) (Entered: 10/21/2009) |
| 10/21/2009 | | 33 | CJA 20 as to Richard Johnson: Appointment of Attorney William B Purpura, Jr for Richard Johnson.. Signed by Clerk on 10/20/2009. (Attachments: # 1 CJA 21) (egs, Deputy Clerk) (Entered: 10/21/2009) |
| 10/23/2009 | | 38 | Consent MOTION for Protective Order by USA as to Richard Johnson. (eg, Deputy Clerk) (Entered: 10/26/2009) |
| 10/23/2009 | | 39 | ORDER granting 38 Consent Motion for Protective Order as to Richard Johnson (3). Signed by Magistrate Judge Beth P. Gesner on 10/23/2009. (eg, Deputy Clerk) (Entered: 10/26/2009) |
| 10/26/2009 | | | PAPERLESS NOTICE OF HEARING by U.S. Attorney's Office as to Richard Johnson *The presence of the defendant is Ordered.* Detention Hearing set for 11/4/2009 11:30 AM in Courtroom 7C, 101 West Lombard Street, Baltimore, Maryland 21201, before Magistrate Judge Beth P. Gesner. (Magnelli, Solette) (Entered: 10/26/2009) |
| 10/26/2009 | 🔒 | 40 | Detention Hearing as to Richard Johnson continued on 10/26/2009 before Magistrate Judge Beth P. Gesner. Hearing continued to November 4, 2009 @ 11:30 a.m. (FTR Gold: C. Crawford) (crc, Deputy Clerk) (Entered: 10/27/2009) |
| 10/27/2009 | | 43 | ORDER OF DETENTION By Agreement as to Richard Johnson. Signed by Magistrate Judge Beth P. Gesner on 10/26/2009. (eg, Deputy Clerk) (Entered: 10/27/2009) |
| 10/27/2009 | 🔒 | 44 | (FILED IN ERROR) ORDER OF DETENTION as to Richard Johnson. Signed by Magistrate Judge Beth P. Gesner on 10/27/2009. (eg, Deputy Clerk) Modified on 10/27/2009 (eg, Deputy Clerk). (Entered: 10/27/2009) |
| 11/04/2009 | 🔒 | 46 | Detention Hearing as to Richard Johnson held on 11/4/2009 before Magistrate Judge Susan K. Gauvey. (FTR Gold: C. Crawford) (crc, Deputy Clerk) (Entered: 11/04/2009) |
| 11/04/2009 | | | PAPERLESS NOTICE OF HEARING by U.S. Attorney's Office as to Richard Johnson Name of Counsel for Defendant(s) William Purpura *The presence of the defendant is Ordered.* Arraignment set for 11/10/2009 03:00 PM before Magistrate Judge Susan K. Gauvey. (Magnelli, Solette) (Entered: 11/04/2009) |
| 11/04/2009 | | 47 | ORDER OF DETENTION BY AGREEMENT as to Richard Johnson. Signed by Magistrate Judge Susan K. Gauvey on 11/4/2009. (eg, Deputy Clerk) (Entered: 11/04/2009) |
| 11/04/2009 | | 48 | ORDER for Medical Evaluation as to Richard Johnson. Signed by Magistrate Judge Susan K. Gauvey on 11/4/2009. (eg, Deputy Clerk) (Entered: 11/04/2009) |

| | | | |
|---|---|---|---|
| 11/10/2009 | 🔒 | 49 | Arraignment as to Richard Johnson (3) Count 1,2,3,4,7 held on 11/10/2009. Plea entered by Richard Johnson Not Guilty on counts 1, 2, 3, 4 & 7 before Magistrate Judge Susan K. Gauvey. (Court Reporter FTR Smith.) (jas, Deputy Clerk) (Entered: 11/10/2009) |
| 12/03/2009 | | | PAPERLESS NOTICE OF HEARING by U.S. Attorney's Office as to Richard Johnson *The presence of the defendant is Ordered.* Sentencing set for 2/12/2010 10:00 AM in Courtroom 5A, 101 West Lombard Street, Baltimore, Maryland 21201, before Judge J. Frederick Motz. (Magnelli, Solette) (Entered: 12/03/2009) |
| 12/03/2009 | 🔒 | 50 | Rearraignment as to Richard Johnson (3) as to Counts 1,2,3,4,7 held on 12/3/2009. Plea entered by Richard Johnson (3)of Guilty on Counts 1,2,3,4,7 before Judge J. Frederick Motz. (Court Reporter: Christine Asif) (kmt, Deputy Clerk) (Entered: 12/03/2009) |
| 12/04/2009 | | 51 | PLEA AGREEMENT as to Richard Johnson (eg, Deputy Clerk) (Entered: 12/04/2009) |
| 12/04/2009 | 🔒 | 52 | PLEA SUPPLEMENT as to Richard Johnson (eg, Deputy Clerk) (Entered: 12/04/2009) |
| 12/04/2009 | | 53 | Sentencing Order as to Richard Johnson. Signed by Judge J. Frederick Motz on 12/3/2009. (eg, Deputy Clerk) (Entered: 12/04/2009) |
| 02/04/2010 | | | Amended PAPERLESS NOTICE OF HEARING by U.S. Attorney's Office as to Richard Johnson *The presence of the defendant is Ordered. Rescheduled* Sentencing set for 5/7/2010 02:15 PM in Courtroom 5A, 101 West Lombard Street, Baltimore, Maryland 21201, before Judge J. Frederick Motz. (Magnelli, Solette) (Entered: 02/04/2010) |
| 03/22/2010 | | | Amended PAPERLESS NOTICE OF HEARING by U.S. Attorney's Office as to Richard Johnson *The presence of the defendant is Ordered. Rescheduled* Sentencing set for 4/30/2010 11:30 AM in Courtroom 5A, 101 West Lombard Street, Baltimore, Maryland 21201, before Judge J. Frederick Motz. (Magnelli, Solette) (Entered: 03/22/2010) |
| 04/30/2010 | 🔒 | 102 | Sentencing as to Richard Johnson held on 4/30/2010 before Judge J. Frederick Motz. (Court Reporter: Christine Asif) (mdw, Deputy Clerk) (Entered: 04/30/2010) |
| 05/18/2010 | | 109 | JUDGMENT as to Richard Johnson (3), Count(s) 1, 2, 3, 4, 7, Imprisonment for a Term of 60 months as to Count 1; 120 as to Count 2; 121 months as to Counts 3,4 & 7, to run concurrent with each other for a total term of 121 months; Supervised Release for a term of 10 years as to each count to run concurrent with each other; Assessment $500.00. Signed by Judge J. Frederick Motz on 5/18/2010. (egs, Deputy Clerk) (Entered: 05/18/2010) |
| 06/14/2011 | | 114 | MOTION for Copy Work by Richard Johnson. (Attachments: # 1 envelope)(bmh, Deputy Clerk) (Entered: 06/14/2011) |

| 08/27/2012 | | 115 | Correspondence from Richard Johnson re: Request for documents. (bmhs, Deputy Clerk) (Entered: 08/27/2012) |
|---|---|---|---|
| 09/04/2012 | | 116 | ORDER denying 114 Motion for Copy Work as to Richard Johnson (3). Signed by Judge J. Frederick Motz on 9/4/12. (c/m 9/4/12 jnls, Deputy Clerk) (Entered: 09/04/2012) |
| 06/06/2016 | | 118 | Correspondence from Richard Johnson re: request for materials (jnls, Deputy Clerk) (Entered: 06/08/2016) |
| 06/20/2016 | | 119 | Correspondence sent to Richard Johnson re: request for materials (Attachments: # 1 Letter to Warden) (c/m staff attys)(jnls, Deputy Clerk) (Entered: 06/20/2016) |
| 01/07/2019 | 🔒 | 123 | STATUS REPORT on offender under supervision - No Action as to Richard Johnson (Crystal Mercer, Probation Supervisor) (Entered: 01/07/2019) |

2009R00363:sam

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. JFM-09-0512 |
| | : | |
| v. | : | (Conspiracy Related to Interstate |
| | : | Prostitution, 18 U.S.C. § 371; Interstate |
| CRAIG ALLEN COREY II, | : | Transportation for Prostitution, 18 |
| ROBERT HARRIS, | : | U.S.C. § 2421; Enticement, 18 U.S.C. § |
|    a/k/a "Little Rob" | : | 2422(a); Sex Trafficking by Force, Fraud |
| RICHARD JOHNSON, | : | and Coercion, 18 U.S.C. § 1591; Sex |
|    a/k/a "Little Richy" | : | Trafficking of a Minor, 18 U.S.C. § 1591; |
| and | : | Distribution of Child Pornography, |
| JACOB TYLER, | : | 18 U.S.C. § 2252(a)(2);  Narcotics |
| | : | Conspiracy, 21 U.S.C. § 846; |
|    Defendants. | : | Distribution of BZP, 21 U.S.C. §§ |
| | : | 841(a)(1); Aiding & Abetting, 18 U.S.C. |
| | : | § 2; Forfeiture). |

...oOo...

### INDICTMENT

### COUNT ONE
**(Conspiracy)**

The Grand Jury for the District of Maryland charges that:

At various times relevant to this Indictment:

### Introduction

1.    Defendant **CRAIG ALLEN COREY II** was a resident of Millersville,

**MARYLAND** and a Private First Class with the United States Army.  **COREY** leased and lived

in an apartment on Millwright Court in Millersville (hereinafter **"COREY's** Millersville

apartment").

2.    Defendant **ROBERT HARRIS, a/k/a "Little Rob," RICHARD JOHNSON,**

**a/k/a "Little Richy," and JACOB TYLER** were residents of Ohio and associates of **COREY**.

1

3.    Craigslist is a centralized network of online communities, featuring free and paid online classified advertisements, with sections devoted to various topics including goods and services for sale.

4.    "Jane Doe 1" was a female resident of Ohio and was 18 years old.

5.    "Jane Doe 2" was a female resident of Ohio and was 16 years old.

### The Conspiracy

6.    Beginning at least in or about January, 2009 through in or about April, 2009, in the District of Maryland, and elsewhere, the defendants,

**CRAIG ALLEN COREY II,**
**ROBERT HARRIS,**
**a/k/a "Little Rob,"**
**RICHARD JOHNSON,**
**a/k/a "Little Richy,"**
**and**
**JACOB TYLER**

did knowingly and willfully combine, conspire, confederate and agree with others both known and unknown to the Grand Jury to:

(a)    knowingly transport any individual in interstate commerce with intent that such individuals engage in prostitution in violation of Title 18, United States Code, § 2421; and

(b)    knowingly persuade, induce, entice and coerce any individual to travel in interstate commerce to engage in prostitution in violation of Title 18, United States Code, § 2422(a).

### Manner and Means of the Conspiracy

7.    It was part of the conspiracy that **CRAIG ALLEN COREY II, ROBERT HARRIS, a/k/a "Little Rob," RICHARD JOHNSON a/k/a "Little Richy," and JACOB**

**TYLER**, and others both known and unknown to the Grand Jury, operated an interstate prostitution business.

8.      It was part of the conspiracy that **CRAIG ALLEN COREY II, ROBERT HARRIS , a/k/a "Little Rob," RICHARD JOHNSON, a/k/a "Little Richy," JACOB TYLER**, and others both known and unknown to the Grand Jury, used Craigslist and other web-based services to persuade, encourage, entice and recruit females to serve as prostitutes and promote their prostitution business.

9.      It was part of the conspiracy that **CRAIG ALLEN COREY II, ROBERT HARRIS, a/k/a "Little Rob," RICHARD JOHNSON, a/k/a "Little Richy," JACOB TYLER**, and others both known and unknown to the Grand Jury, advertised sexual services on Craigslist.

10.      It was further part of the conspiracy that **CRAIG ALLEN COREY II, ROBERT HARRIS, a/k/a "Little Rob," RICHARD JOHNSON, a/k/a "Little Richy," JACOB TYLER**, and others both known and unknown to the Grand Jury, used prepaid debit cards and aliases when posting Craigslist ads for sexual services in order to conceal their unlawful activities.

11.      It was a part of the conspiracy that **CRAIG ALLEN COREY II, ROBERT HARRIS, a/k/a "Little Rob," RICHARD JOHNSON, a/k/a "Little Richy," JACOB TYLER**, and others both known and unknown to the Grand Jury, photographed females in various states of undress for use in advertising sexual services on Craigslist.

12.      It was part of the conspiracy that **CRAIG ALLEN COREY II, ROBERT HARRIS, a/k/a "Little Rob," RICHARD JOHNSON, a/k/a "Little Richy," JACOB**

3

**TYLER**, and others both known and unknown to the Grand Jury, would use cellular telephones and the internet to facilitate prostitution.

13.     It was part of the conspiracy that **CRAIG ALLEN COREY II, ROBERT HARRIS, a/k/a "Little Rob," RICHARD JOHNSON, a/k/a "Little Richy," JACOB TYLER**, and others both known and unknown to the Grand Jury, would travel from destinations within and outside of Maryland to facilitate their prostitution business.

14.     It was part of the conspiracy that **CRAIG ALLEN COREY II,  ROBERT HARRIS, a/k/a "Little Rob," RICHARD JOHNSON, a/k/a "Little Richy," JACOB TYLER**, and others both known and unknown to the Grand Jury, would collect and share the cash proceeds of the prostitution business.

15.     It was part of the conspiracy that **CRAIG ALLEN COREY II, ROBERT HARRIS, a/k/a "Little Rob," RICHARD JOHNSON, a/k/a "Little Richy," JACOB TYLER**, and others both known and unknown to the Grand Jury, would use a portion of the prostitution proceeds to purchase illegal narcotics.

16.     It was a part of the conspiracy that **CRAIG ALLEN COREY II, ROBERT HARRIS, a/k/a "Little Rob," RICHARD JOHNSON, a/k/a "Little Richy," JACOB TYLER**, and others both known and unknown to the Grand Jury, distributed illegal narcotics to associates, to prostitutes, to customers and to others.

### Overt Acts

17.     In furtherance of the conspiracy, and to effect the objects thereof, **CRAIG ALLEN COREY II,  ROBERT HARRIS, a/k/a "Little Rob," RICHARD JOHNSON, a/k/a "Little Richy," JACOB TYLER**, and others both known and unknown to the Grand Jury,

4

committed the following overt acts in the District of Maryland and elsewhere:

      a.      On or about January 25, 2009, **JACOB TYLER** advertised two females on Craigslist as providing sexual services for a fee at **COREY's** Millersville apartment.

      b.      On or about February 5, 2009, **JACOB TYLER** advertised a female on Craigslist as providing sexual services for a fee at **COREY's** Millersville apartment.

      c.      On or about February 6, 2009, **CRAIG ALLEN COREY II** booked a female for travel by airplane from Ohio to Maryland so that the female could engage in commercial sex activities in Maryland.

      d.      On or about February 6, 2009, **CRAIG ALLEN COREY II** used a credit card with an address in the name of a relative to pay for travel for a female to travel from Ohio to Maryland so that the female could engage in commercial sex activities in Maryland.

      e.      On or about February 10, 2009, a coconspirator posted two Craigslist ads listing from an Internet Protocol address registered to **CRAIG ALLEN COREY II**, offering herself and another female as prostitutes under the monikers "Shawna" and "Veronica".

      f.      On or about February 10, 2009, **CRAIG ALLEN COREY II** used his personal email account that showed receipt of confirmation for payment of Craigslist advertisements for sexual services for a fee and inquiries from potential sex customers.

      g.      At some time between January and April 2009, **JACOB TYLER** brandished a firearm in a threatening manner against a sex customer at **COREY's** Millersville apartment.

      h.      At some time between January and April 2009, **CRAIG ALLEN COREY II, RICHARD JOHNSON, a/k/a "Little Richy," JACOB TYLER**, and another co-

5

conspirator drove from Maryland to Michigan to obtain illegal narcotics.

        i.      At some time between March and April 2009, **ROBERT HARRIS, a/k/a "Little Rob,"** facilitated the transportation of a female from Ohio to Maryland to engage in commercial sex acts at **COREY's** Millersville apartment.

        j.      At some time between March and April 2009, **ROBERT HARRIS, a/k/a "Little Rob,"** physically assaulted "Jane Doe 1".

        k.      At some time between March and April 2009, **RICHARD JOHNSON, a/k/a "Little Richy,"** facilitated the transportation of a female from Ohio to Maryland to engage in commercial sex acts at **COREY's** Millersville apartment.

        l.      At some time in April 2009, **CRAIG ALLEN COREY II** facilitated the transportation of "Jane Doe 2" from Ohio to Maryland to engage in commercial sex acts.

        m.      At some time in April 2009, co-conspirators took photographs of "Jane Doe 2" in various states of undress for use in Craigslist postings advertising sexual services for a fee at **COREY's** Millersville apartment.

        n.      On or about April 20, 2009, **CRAIG ALLEN COREY II**, and other co-conspirators, posted an advertisement on Craigslist utilizing **COREY's** name, a phone number and address registered to a relative of **COREY**, an Internet Protocol address registered to **COREY** and offering "Jane Doe 2" for sexual services for a fee in Anne Arundel County, Maryland under the moniker "Vanilla."

        o.      On or about April 20, 2009, **CRAIG ALLEN COREY II**, and other co-conspirators, used Craigslist to instruct sex customers to call a phone number subscribed to "CRAIG CORUY."

6

p.    On or about April 20, 2009, **CRAIG ALLEN COREY II**, and other co-conspirators, posted a photograph of "Jane Doe 2" partially disrobed.

q.    On or about April 21, 2009, **CRAIG ALLEN COREY II**, and other co-conspirators, posted an advertisement on Craigslist utilizing **COREY's** name, a phone number and address registered to a relative of **COREY**, an Internet Protocol address registered to **COREY** and offering "Jane Doe 2" for sexual services for a under the moniker "Vanilla."

r.    On or about April 21, 2009, **CRAIG ALLEN COREY II**, and other co-conspirators, used Craigslist to instruct sex customers to call a phone number subscribed to "CRAIG CORUY."

s.    On or about April 21, 2009, **CRAIG ALLEN COREY II**, and other co-conspirators, posted a photograph of "Jane Doe 2" partially disrobed.

t.    On or about April 22, 2009, **CRAIG ALLEN COREY II**, and other co-conspirators, posted an advertisement on Craigslist utilizing **COREY's** name, a phone number and address registered to a relative of **COREY**, an Internet Protocol address registered to **COREY** and offering "Jane Doe 2" for sexual services for a fee under the moniker "Vanilla."

u.    On or about April 22, 2009, **CRAIG ALLEN COREY II**, and other co-conspirators, used Craigslist to instruct sex customers to call a phone number subscribed to "CRAIG CORUY."

v.    On or about April 22, 2009, **CRAIG ALLEN COREY II**, and other co-conspirators, posted a photograph of "Jane Doe 2" partially disrobed.

w.    On or about April 23, 2009, **CRAIG ALLEN COREY II**, and other co-conspirators, posted an advertisement on Craigslist utilizing **COREY's** name, a phone number

7

and address registered to a relative of **COREY**, an Internet Protocol address registered to

**COREY** and offering "Jane Doe 2" for sexual services for a fee under the moniker "Vanilla."

        x.     On or about April 23, 2009, **CRAIG ALLEN COREY II**, and other co-

conspirators, used Craigslist to instruct sex customers to call a phone number subscribed to

"CRAIG CORUY."

        y.     On or about April 23, 2009, **CRAIG ALLEN COREY II**, and other co-

conspirators, posted a photograph of "Jane Doe 2" partially disrobed.

        z.     In April 2009, **CRAIG ALLEN COREY II**, and others, received monies

that had been exchanged for commercial sex acts with "Jane Doe 2."

18 U.S.C. § 371.

8

## COUNT TWO
### (Interstate Transportation for Prostitution)

The Grand Jury for the District of Maryland further charges that:

1.     The allegations set forth in Paragraphs 1 through 5 and 17 of Count One of this

Indictment are incorporated by reference here.

2.     From in or about January, 2009 through in or about April, 2009, in the District of

Maryland and elsewhere, the defendants,

**CRAIG ALLEN COREY II,**
**ROBERT HARRIS,**
**a/k/a "Little Rob,"**
**RICHARD JOHNSON,**
**a/k/a "Little Richy," and**
**JACOB TYLER,**

did knowingly and intentionally transport individuals in interstate and foreign commerce with the

intent that such individuals engage in prostitution.

18 U.S.C. § 2421
18 U.S.C. § 2

9

## COUNT THREE
### (Enticement)

The Grand Jury for the District of Maryland further charges that:

1.     The allegations set forth in Paragraphs 1 through 5 and 17 of Count One of this

Indictment are incorporated by reference here.

2.     From in or about January, 2009 through in or about April, 2009, in the District of

Maryland and elsewhere, the defendants,

**CRAIG ALLEN COREY II,**
**ROBERT HARRIS,**
**a/k/a "Little Rob,"**
**RICHARD JOHNSON,**
**a/k/a "Little Richy,"**
**and**
**JACOB TYLER,**

did knowingly persuade, induce, entice, and coerce individuals to travel in interstate and foreign

commerce to engage in prostitution.

18 U.S.C. § 2422(a)
18 U.S.C. § 2

10

## COUNT FOUR
### (Sex Trafficking by Force, Fraud and Coercion)

The Grand Jury for the District of Maryland further charges that:

1.     The allegations set forth in Paragraphs 1 through 5 and 17 of Count One of this

Indictment are incorporated by reference here.

2.     From in or about March 2009 through in or about April 2009, in the District of

Maryland and elsewhere, the defendants,

**CRAIG ALLEN COREY II,**
**ROBERT HARRIS,**
**a/k/a "Little Rob,"**
**and**
**RICHARD JOHNSON,**
**a/k/a "Little Richy,"**

did knowingly, in and affecting interstate and foreign commerce, recruit, entice, harbor,

transport, provide, obtain and maintain by any means a person, namely, "Jane Doe 1," and did

benefit, financially and by receiving anything of value, from participation in a venture engaged in

such acts, knowing and in reckless disregard of the fact that force, fraud and coercion would be

used to cause "Jane Doe 1" to engage in a commercial sex act.

18 U.S.C. § 1591(a)
18 U.S.C. § 2

11

## COUNT FIVE
### (Sex Trafficking of a Minor)

The Grand Jury for the District of Maryland further charges that:

1.      The allegations set forth in Paragraphs 1 through 5 and 17 of Count One of this Indictment are incorporated by reference here.

2.      "Jane Doe 2" was a female resident of Ohio and was 16 years old.

3.      From on or about April 20, 2009 through on or about April 24, 2009, in the District of Maryland and elsewhere, the defendant,

## CRAIG ALLEN COREY II,

did knowingly, in and affecting interstate and foreign commerce, recruit, entice, harbor, transport, provide, obtain and maintain by any means a person, namely, "Jane Doe 2," and did benefit, financially and by receiving anything of value, from participation in a venture engaged in such acts, knowing and in reckless disregard of the fact that force, fraud and coercion would be used to cause "Jane Doe 2" to engage in a commercial sex act, and knowing and in reckless disregard that "Jane Doe 2" had not attained the age of 18 years and would be caused to engage in a commercial sex act.

18 U.S.C. § 1591(a)
18 U.S.C. § 2

12

## COUNT SIX
### (Distribution of Child Pornography)

The Grand Jury for the District of Maryland further charges that:

1.      The allegations set forth in Paragraphs 1 through 5 and 17 of this Indictment are incorporated by reference here.

2.      From on or about April 20, 2009 through on or about April 23, 2009, in the District of Maryland and elsewhere, the defendant,

### CRAIG ALLEN COREY II,

did knowingly distribute any visual depiction using any means and facility of interstate and foreign commerce, and that had been mailed, shipped and transported in and affecting interstate and foreign commerce, and which contained materials that had been so mailed, shipped and transported, by any means including by computer, and knowingly reproduce any visual depiction for distribution using any means and facility of interstate and foreign commerce and in and affecting interstate and foreign commerce and through the mails, the production of which involved the use of a minor engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256(2), and such depiction being of such conduct, that is, the defendant posted to Craigslist visual depictions of "Jane Doe 2" engaging in sexually explicit conduct.

18 U.S.C. § 2252(a)
18 U.S.C. § 2

13

## COUNT SEVEN
### (Conspiracy to Distribute Narcotics)

The Grand Jury for the District of Maryland further charges that:

1.     The allegations set forth in Paragraphs 1 through 5 and 17 of this Indictment are incorporated by reference here.

2.     At some time between January, 2009 and September, 2009, in the District of Maryland, and elsewhere, the defendants,

**CRAIG ALLEN COREY II,**
**ROBERT HARRIS,**
**a/k/a "Little Rob,"**
**RICHARD JOHNSON,**
**a/k/a "Little Richy,"**
**and**
**JACOB TYLER,**

did knowingly and intentionally combine, conspire, confederate and agree with others, known and unknown to the Grand Jury, to distribute and possess with intent to distribute a quantity of a mixture or substance containing a detectable amount of 3,4-Methylenedioxymethamphetamine (MDMA), also known as Ecstasy, a Schedule I controlled substance, and N-Benzylpiperazine, also known as BZP, a Schedule I controlled substance

21 U.S.C. § 846
21 U.S.C. § 841(a)(1)

14

## COUNT EIGHT
### (Distribution of BZP)

The Grand Jury for the District of Maryland further charges that:

On or about September 9, 2009, in the District of Maryland and elsewhere, the defendant,

### CRAIG ALLEN COREY II,

did knowingly and intentionally distribute a quantity of a mixture or substance containing a

detectable amount of N-Benzylpiperazine, also known as BZP, a Schedule I controlled substance.

21 U.S.C. §§ 841(a)(1)
18 U.S.C. § 2

15

## FORFEITURE ALLEGATIONS

The Grand Jury further finds that:

1.      As a result of the offenses alleged in this Indictment, the defendants shall forfeit

to the United States:

a.      all property, real and personal, which constitutes and is derived from proceeds obtained, directly and indirectly, and traceable to the offenses;

b.      all property, real and personal, that was used and intended to be used, in any manner and part, to commit, facilitate and promote commission of the offenses; and

c.      all property, that constitutes and is derived from any proceeds obtained, directly and indirectly, as a result of the offense, and that is traceable to gross profits and other proceeds obtained from the offense.

2.      The property forfeited shall include but not be limited to:

a.      A sum of money equal to the value of the proceeds of any of the offenses;

b.      A 2006 Chrysler 300, four-door, black in color, Ohio Registration: ECP 5049, Vehicle Identification Number: 2C3KK53G26H163377; and

c.      A 42" Sharp HDTV LCD

3.      If any of the property described above, as a result of any act and omission

of the defendants:

a.      cannot be located upon the exercise of due diligence;

b.      has been transferred and sold to, and deposited with, a third party;

c.      has been placed beyond the jurisdiction of the court;

d.      has been substantially diminished in value; and

e.      has been commingled with other property which cannot be divided without difficulty, the United States of America shall be entitled to forfeiture of substitute property.

18 U.S.C. §§ 981(a)(1)(C), 1594, 2253 and 2428
21 U.S.C. § 853
28 U.S.C. § 2461(c)

ROD J. ROSENSTEIN
United States Attorney

A TRUE BILL:

**SIGNATURE REDACTED**

9 - 24 - 2009
DATE

16



**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*
*Southern Division*

<table>
<tr><td>Rod J. Rosenstein<br>United States Attorney<br><br>Solette A. Magnelli<br>Assistant United States Attorney</td><td>400 United States Courthouse<br>6500 Cherrywood Lane<br>Greenbelt, MD 20770-1249</td><td>DIRECT: 301-344-4124<br>MAIN: 301-344-4433<br>FAX: 301-344-4516<br>TTY/TDD: 301-344-2426<br>Solette.Magnelli@usdoj.gov</td></tr>
</table>

November 17, 2009

William B. Purpura, Esquire
8 East Mulberry Street
Baltimore, MD 21202-2105

     Re:    United States v. Richard Johnson, JFM-09-0512

Dear Mr. Purpura:

     This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by November 24, 2009, it will be deemed withdrawn. The terms of the agreement are as follows:

Offense of Conviction

     1.    The Defendant agrees to plead guilty to Counts One through Four and Count Seven of the Indictment now pending against him, which charges him with Conspiracy Related to Interstate Prostitution, in violation of 18 U.S.C. § 371 (Count One); Interstate Transportation for Prostitution (Mann Act), in violation of 18 U.S.C. § 2421 (Count Two); Enticement, in violation of 18 U.S.C. § 2422(a)(Count Three); Sex Trafficking by Force, Fraud and Coercion, in violation of 18 U.S.C. § 1591(Count Four); and Conspiracy to Distribute and Possess with Intent to Controlled Dangerous Substances (Count Seven), in violation of 21 U.S.C. § 846. The Defendant admits that he is, in fact, guilty of these offenses and will so advise the Court.

Elements of the Offense

     2.    The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

Revised 11/5/09

Elements of the Offense

2.      The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

### Count One: Conspiracy Related to Interstate Prostitution

a.      That a conspiracy between two or more persons to transport any individual with intent that such individuals engage in prostitution as charged in the Indictment existed,

b.      That a conspiracy between two or more persons to persuade, induce, entice and coerce any individual to travel in interstate commerce to engage in prostitution as charged in the Indictment existed,

c.      That the defendant knowingly and intentionally became a member of that conspiracy, and

d.      That one or more of co-conspirators did any act to effect the object of the conspiracy.

### Count Two: Interstate Transportation for Prostitution

a.      The defendant did knowingly and intentionally,

b.      Transport individuals in interstate and foreign commerce,

c.      With the intent that such individuals engage in prostitution.

### Count Three: Enticement

a.      The defendant did knowingly,

b.      Persuade, induce, entice and coerce an individual,

c.      To travel in interstate and foreign commerce to engage in prostitution.

### Count Four: Sex Trafficking by Force, Fraud and Coercion

a.      The defendant knowingly,

b.      In and affecting interstate and foreign commerce,

c.      Recruited, enticed, harbored, transported, provided and obtained by any means an individual,

d.      Benefitted financially and received anything of value from participation in a venture engaged in such acts, and

e.      Knowing or in reckless disregard of the fact that force, fraud and coercion would be used to cause said individual to engage in a commercial sex act.

### Count Seven: Narcotics Conspiracy

a.      At or about the time charged in the Indictment, the Defendant knowingly, intentionally and willfully agreed with one or more persons to distribute or  possess with the

Revised  11/5/09

intent to distribute, the types and quantities of the drugs set forth in the Indictment, and

        b.     That the defendant knowingly and intentionally became a member of that conspiracy.

## Penalties

    3.    The maximum sentence provided by statute for the offenses to which the Defendant is pleading guilty is as follows:

        a.     Count One:   a maximum term of five years, $250,000 fine, and a maximum term of supervised release of 3 years.

        b.     Count Two:   a maximum term of 10 years, $250,000 fine, a maximum term of supervised release for life and a mandatory minimum term of supervised release of five years pursuant to 18 U.S.C. § 3583(k).

        c.     Count Three:  a maximum term of 20 years, $250,000 fine, a maximum term of supervised release for life and a mandatory minimum term of supervised release of five years pursuant to 18 U.S.C. § 3583(k).

        d.     Count Four:   a maximum term of life imprisonment and a mandatory minimum sentence of fifteen (15) years pursuant to 18 U.S.C. § 1591(b)(1), $250,000, a maximum term of supervised release for life and a mandatory minimum term of supervised release of five years pursuant to 18 U.S.C. § 3583(k).

        e.     Count Seven:  a maximum term of 20 years, $1,000,000 fine, a maximum term of supervised release for five years and a mandatory minimum term of supervised release of three years pursuant to 21 U.S.C. § 841(b)(1)(C).

    4.    In addition, the Defendant must pay $500.00 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing. This Court must also order restitution, if restitution is warranted, pursuant to 18 U.S.C. §§ 1593(a), 3663, 3663A, and 3664. If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

    5.    The Defendant understands and agrees that as a consequence of his conviction for the crimes to which he is pleading guilty, he will be required to register as a sex offender in the place where he resides, where he is an employee, and where he is a student, pursuant to the Sex

Offender Registration and Notification Act (SORNA), and the laws of the state of his residence. Failure to do so may subject him to new charges pursuant to 18 U.S.C. § 2250.

## Waiver of Rights

6.      The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

a.      If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

b.      If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c.      If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

d.      The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

e.      If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed that would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

f.      By pleading guilty, the Defendant will be giving up all of these rights, including all rights to additional discovery, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

Revised  11/5/09

g.  If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

### Advisory Sentencing Guidelines Apply

7.  The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

### Factual and Advisory Guidelines Stipulation

8.  This Office and the Defendant understand, agree and stipulate to the Statement of Facts set forth in Attachment A hereto, which this Office would prove beyond a reasonable doubt, and to the following applicable sentencing guidelines factors:

a.  Count One groups with Counts Two and Three (Group One).

b.  Counts Two and Three: Mann Act and Enticement

i.  The base offense level is 14. U.S.S.G. § 2G1.1(a)(2).
ii.  The defendant was a manager or supervisor and the criminal activity involved five or more participants or was otherwise extensive, resulting in an increase of three (3) levels. U.S.S.G. § 3B1.1(b).
iii.  Thus, the adjusted offense level is 17.

c.  Count Four: Sex Trafficking by Force, Fraud or Coercion (Group Two)
i.  The offense involved sex trafficking of an individual other than a minor, resulting in a base offense level of 34. U.S.S.G. § 2G1.1(a)(1).

d.  Count Seven: Narcotics Conspiracy (Group Three)
i.  N-Benzylpiperazine, also known as BZP, has a stimulant effect on the central nervous system that is substantially similar to the stimulant effect on the central nervous system of 3, 4-methylenedioxymethamphetamine. U.S.S.G. § 2D1.1, App. Note 5(B); and
ii.  the applicable base offense level is a level 26, pursuant to U.S.S.G. § 2D1.1(c)(7), to account for at least 50 grams but less than 200 grams of methamphetamine.
iii.  The offense also involved the possession of a firearm, resulting in an increase of two (2) levels. U.S.S.G. § 2D1.1(b)(1).
iv.  Thus, the adjusted offense level is 28.

Revised 11/5/09

f.     There are three groups as determined above. Chapter Three, Part D, of the Sentencing Guidelines instructs to count as one Unit the Group with the highest offense level which, in this case, is 34 (Group Two). Group Three is 5 to 8 levels less serious than Group Two and Group One is more than 9 levels less serious than Group There. Thus, the combined offense level is determined by taking the offense level applicable to the Group with the highest offense level and increasing that offense level by one (1) level. U.S.S.G. § 3D1.4. Accordingly, the combined offense level, before any reduction for acceptance of responsibility, is 35.

g.     This Office does not oppose a two-level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level decrease in recognition of the Defendant's timely notification of his intention to plead guilty. This Office may oppose any adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty.

h.     Thus, the final offense level is 32.

9.     The Defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history could alter his offense level if he is a career offender or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income.

### Obligations of the United States Attorney's Office

10.     This Office and the Defendant agree that with respect to the calculation of criminal history and the calculation of the advisory guidelines range, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines will be raised or are in dispute. The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, factors under 18 U.S.C. § 3553a.

### Waiver of Appeal

11.     In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

a.     The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or otherwise, to appeal the Defendant's conviction;

Revised 11/5/09

b.     The Defendant and this Office knowingly waive all rights, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except that this Office reserves the right to appeal any term of imprisonment to the extent that it is below the advisory guidelines range resulting from an adjusted base offense level of 32.

c.     Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

d.     The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## Obstruction or Other Violations of Law

12.     The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement that would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, or (iii) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

## Court Not a Party

13.     The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, the sentence to be imposed is within the sole discretion of the Court. In particular, the Defendant understands that neither the United States Probation Office nor the Court is bound by the stipulation set forth above, and that the Court will, with the aid of the Presentence Report, determine the facts relevant to sentencing. The Defendant understands that the Court cannot rely exclusively upon the stipulation in ascertaining the factors relevant to the determination of sentence. Rather, in determining the factual basis for the sentence, the

Revised 11/5/09

Court will consider the stipulation, together with the results of the presentence investigation, and any other relevant information.  The Defendant understands that if the Court ascertains factors different from those contained in the stipulation set forth above, or if the Court should impose any sentence up to the maximum established by statute, the Defendant cannot, for that reason alone, withdraw his guilty plea.  The Defendant understands that neither the prosecutor, his counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive.  The Defendant agrees that no one has made such a binding prediction or promise.

Entire Agreement

14.      This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case.  The Defendant acknowledges that there are no other agreements, promises, undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By: _____

Solette Magnelli
Assistant United States Attorney

I have read this agreement, including the Sealed Supplement, and have carefully reviewed every part of it with my attorney.  I understand it, and I voluntarily agree to it.  Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it.  I am completely satisfied with the representation of my attorney.

12-3-09
_____
Date

_____
Richard Johnson

I am Richard Johnson's attorney.  I have carefully reviewed every part of this agreement, including the Sealed Supplement with him.  He advises me that he understands and accepts its terms.  To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

12-3-09
_____
Date

_____
William B. Purpura, Esquire

Revised  11/5/09

## ATTACHMENT A

The defendant stipulates and agrees that if this case had proceeded to trial, the government would have proven the following facts beyond a reasonable doubt. The defendant also stipulates and agrees that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.

**RICHARD JOHNSON** a/k/a "Little Richy," age 22, is resident of Chillicothe, Ohio. At all times relevant, **JOHNSON** was unemployed and earned his income from dealing drugs and managing prostitutes. **JOHNSON** also possessed a firearm.

As will be described in detail below, from at least January 2009 through September 2009, **JOHNSON** did knowingly and willfully conspire with Craig COREY, Robert HARRIS, Jacob TYLER, and others, to distribute and possess with intent to distribute at least 50 grams but less than 200 grams of a quantity of a mixture or substance containing a detectable amount of 3,4-Methylenedioxymethamphetamine (MDMA), also known as Ecstasy, a Schedule I controlled substance, and N-Benzylpiperazine, also known as BZP, a Schedule I controlled substance. **JOHNSON** also knowingly and willfully conspired with COREY, HARRIS, TYLER, and others, from at least January 2009 through April 2009, to transport individuals in interstate commerce with intent that such individuals engage in prostitution, and to persuade, induce, entice and coerce individuals to travel in interstate commerce to engage in prostitution. Moreover, at some time between March and April 2009, **JOHNSON**, COREY and HARRIS, did knowingly, in and affecting interstate commerce, recruit, entice, harbor, transport, provide a female referred to herein as "Jane Doe 1," and benefitted financially from participation in said acts.

In approximately January 2009, **JOHNSON** became reacquainted with COREY, with whom he had attended highschool in Ohio. Through COREY and TYLER, **JOHNSON** learned that COREY made frequent trips back to Ohio from his Army assignment in Maryland. TYLER and COREY stated that COREY maintained an apartment in Maryland out of which COREY operated a house of prostitution. The prostitutes who worked at COREY's apartment were advertised on Craigslist, with said postings being paid by pre-paid debit cards purchased from a local Maryland Wal-Mart and CVS. The prostitutes, TYLER and COREY would split the prostitution earnings, which COREY and TYLER stated were significant. **JOHNSON** also learned that COREY purchased Ecstasy from a drug dealer in Detroit, Michigan with whom COREY became acquainted through another soldier. These, and other drugs, were distributed to numerous individuals, including to females to assist in 'motivating' them to prostitute for the defendants. Consequently, **JOHNSON** also began to purchase Ecstasy from COREY's Michigan connection and to purchase Oxycontin from a relative to COREY. **JOHNSON** paid for the additional narcotics from his own drug sales of cocaine, crack, Ecstasy and heroin, which he normally obtained from sources in Columbus, Ohio.

In the relevant time period **JOHNSON** and his co-conspirators transported, and enticed to travel, at least 12 individuals from at least two different states to Maryland. **JOHNSON** directly and successfully recruited at least two of those individuals, though he had attempted to recruit

1

additional females. Many of these females did not have independent forms of transportation or finances, and relied exclusively on the defendants for their well-being. **JOHNSON,** HARRIS and TYLER shared in the prostitution earnings of girls who worked directly for them. COREY, however, received a portion of all the prostitution earnings, which could range in the thousands of dollars per week. COREY spent his earnings on illegal narcotics, electronics, clothes, car accessories and other items symbolizing wealth. **JOHNSON** spent his earnings on illegal narcotics and items symbolizing wealth, such as jewelry and expensive watches. **JOHNSON**, TYLER and COREY often boasted of the money they were earning in Maryland by filming videos displaying items of wealth and posting said videos on the internet.

To further their unlawful activities, **JOHNSON** and his co-conspirators:

a.       used Craigslist, MySpace, YouTube, other web-based social networking and classified advertising services, as well as cellular telephones, to   recruit females to serve as prostitutes, to promote their prostitution business, and to advertise sexual services;

b.       used prepaid debit cards and aliases when posting Craigslist ads for sexual services in order to conceal their unlawful activities;

c.       assisted in photographing females in various states of undress to accompany advertisements of sexual services on Craigslist;

d.       traveled from destinations within and outside of Maryland, including Ohio and New York, to facilitate the prostitution business in Maryland; and,

e.       collected and shared the cash proceeds of the prostitution business, used a portion of the prostitution proceeds to purchase illegal narcotics, and distributed illegal narcotics to associates, prostitutes, sex and drug customers, and others both inside and outside of Maryland.

In February 2009, a female from Ohio drove COREY and **JOHNSON** in COREY's Chrysler 300 to COREY's Millersville, Maryland apartment. Two additional female prostitutes also made this trip from Ohio to Maryland for the purpose of prostituting at COREY's apartment; TYLER also arrived shortly thereafter. At the time, two additional female prostitutes were already working out of COREY's apartment. Over the course of **JOHNSON**'s first two-week stay, at least five females were working as prostitutes out of COREY's apartment.

On a subsequent visit to Maryland, at least three female prostitutes were working from the apartment and a fourth female flew from Ohio to Baltimore, Maryland to prostitute as well. COREY paid for the fourth female's airfare and picked her up from the airport. **JOHNSON** would also accompany COREY to the Greyhound bus station to pick up female prostitutes who had traveled from New York to Maryland to work out of COREY's apartment.

During **JOHNSON**'s numerous visits to COREY's Maryland apartment, **JOHNSON** assisted in posing these females for nude photographs to accompany Craigslist ads for the sale of sexual services. **JOHNSON** also provided COREY with **JOHNSON**'s pre-paid debit card number to pay for prostitution ads on Craigslist. While COREY would leave for work during the day, **JOHNSON**, TYLER and HARRIS would manage the prostitutes in COREY's apartment as well as provide protection. **JOHNSON**, TYLER and HARRIS would hide in one of the bedrooms when 'dates' were

2

in the apartment for the prostitutes. In any two-week period, more than 30 males would arrive for dates with the prostitutes at COREY's apartment. On one such occasion, TYLER brandished a black pistol at a sex customer when a dispute arose. **JOHNSON** later discharged the same weapon in the apartment in view of several of the prostitutes. **JOHNSON**, TYLER and COREY also visited a local firing range to practice shooting firearms, a fact that was known to the prostitutes in the apartment. On other occasions, when it was COREY who became aggressive with the prostitutes, the prostitutes would contact a relative of COREY's in Ohio for assistance. TYLER and HARRIS also became physically assaultive with female prostitutes if they refused to continue working, and **JOHNSON** was also known to become physically assaultive when angry.

**JOHNSON**, COREY, HARRIS and TYLER also distributed numerous illegal narcotics to the prostitutes and other females in Maryland, including Xanax, Percoset, Ecstasy and BZP. Some females would travel to Maryland from Ohio but would not engage in prostitution. Instead, they would assist the business by posting ads, collecting prostitution proceeds, and maintaining the apartment, all in exchange for illegal narcotics from **JOHNSON**, COREY, HARRIS and TYLER. Many of these females did not have independent forms of transportation or finances, and relied exclusively on the defendants for their well-being. COREY, who returned to Ohio every two weeks to replenish his drug supply, purchased numerous illegal narcotics from **JOHNSON**, which COREY then took back to Maryland for distribution. **JOHNSON** returned to Maryland on numerous occasions to utilize COREY's apartment to create a drug business in the Baltimore market.

On at least three occasions, **JOHNSON** went to Detroit, Michigan with COREY to purchase illegal narcotics. On the first such occasion, **JOHNSON** rode with COREY, TYLER and a female individual. While in Detroit, **JOHNSON** and COREY purchased and split approximately 300 Ecstasy and/or BZP pills. The pills came in a plastic bag and COREY stored them in a hidden compartment located around the television monitor in COREY's Chrysler 300. COREY and **JOHNSON** later distributed these drugs in Ohio and Maryland.

Upon his release from Maryland state custody in August 2009, **JOHNSON** returned to Ohio and continued to negotiate drug sales with COREY, who was still located in Maryland. **JOHNSON** also contacted numerous potential witnesses in this matter to provide warnings that law enforcement was still investigating these matters, until his arrest in September 2009.

12-3-09
Date

Richard Johnson

12-3-09
Date

William B. Purpura, Esquire

3

Sheet 1 - Judgment in a Criminal Case with Supervised Release (Rev. 2/2005)

Judgment Page 1 of 6

mdw

# United States District Court
## District of Maryland

2010 MAY 18 ₱ 2: 23

UNITED STATES OF AMERICA

v.

RICHARD JOHNSON
a/k/a Little Richy

**JUDGMENT IN A CRIMINAL CASE**
(For Offenses Committed on or After November 1, 1987)

Case Number: JFM-1-09-CR-00512-003
USM Number: [USM Number]
Defendant's Attorney: William Purpura (CJA)

Assistant U.S. Attorney: Solette Magnelli

## THE DEFENDANT:

- [X] pleaded guilty to count(s) __1,2,3,4 & 7__
- [ ] pleaded nolo contendere to count(s) _____, which was accepted by the court.
- [ ] was found guilty on count(s) _____ after a plea of not guilty.

| Title & Section | Nature of Offense | Date Offense Concluded | Count Number(s) |
|---|---|---|---|
| 18:371 | Conspiracy related to Interstate Prostitution. | April 2009 | 1 |
| 18:2421 & 2 | Interstate transportation for Prostitution; Aiding and Abetting. | April 2009 | 2 |
| 18:2422(a) & 2 | Enticement; Aiding and Abetting. | April 2009 | 3 |
| 18:1591(a) & 2 | Sex Trafficking by Force, Fraud and Coercion; Aiding and Abetting. | April 2009 | 4 |
| 21:846 & 841(a)(1) | Conspiracy to distr. and possess w/intent to distr. a mixture containing MDMA, a Sch. I CS AND BZP, a Sch. I CS. | September 2009 | 7 |

The defendant is adjudged guilty of the offenses listed above and sentenced as provided in pages 2 through __6__ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984 as modified by U.S. v. Booker, 125 S. Ct. 738 (2005).

- [ ] The defendant has been found not guilty on count(s) _____
- [ ] Count(s) _____ (is)(are) dismissed on the motion of the United States.

**IT IS FURTHER ORDERED** that the defendant shall notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.

__April 30, 2010__
Date of Imposition of Judgment

J. FREDERICK MOTZ
U.S. DISTRICT JUDGE

5/18/0
Date

Name of Court Reporter: Christine Asif

Sheet 2 - Judgment in a Criminal Case with Supervised Release (Rev. 2/2005)                                        Judgment Page 2 of 6

**DEFENDANT: RICHARD JOHNSON**                        **CASE NUMBER: JFM-1-09-CR-00512-003**
a/k/a Little Richy

# IMPRISONMENT

     The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of __60__ months as to Count No. 1; __120__ months as to Count No. 2; __121__ months as to Count Nos. 3,4 & 7, to run concurrent with each other for a total term of __121__ months.

☒ The court makes the following recommendations to the Bureau of Prisons:
     1. That the defendant be placed in a facility consistent with his security level that is as close as possible to Ketucky.

☒ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

     ☐ at _____ a.m./p.m. on _____.
     ☐ as notified by the United States Marshal.

☐ The defendant shall surrender, at his/her own expense, to the institution designated by the Bureau of Prisons at the date and time specified in a written notice to be sent to the defendant by the United States Marshal. If the defendant does not receive such a written notice, defendant shall surrender to the United States Marshal:

     ☐ before 2 p.m. on _____.

**A defendant who fails to report either to the designated institution or to the United States Marshal as directed shall be subject to the penalties of Title 18 U.S.C. §3146. If convicted of an offense while on release, the defendant shall be subject to the penalties set forth in 18 U.S.C. §3147. For violation of a condition of release, the defendant shall be subject to the sanctions set forth in Title 18 U.S.C. §3148. Any bond or property posted may be forfeited and judgment entered against the defendant and the surety in the full amount of the bond.**

## RETURN

I have executed this judgment as follows:

     Defendant delivered on _____ to _____ at _____, with a certified copy of this judgment.

                                        _____

                                        UNITED STATES MARSHAL

                                        By:_____
                                        DEPUTY U.S. MARSHAL

Sheet 3 - Judgment in a Criminal Case with Supervised Release (Rev. 2/2005)                                     Judgment Page 3 of  6

**DEFENDANT: RICHARD JOHNSON**                                                **CASE NUMBER: JFM-1-09-CR-00512-003**
a/k/a Little Richy

# SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of   10 years as to
each count to run concurrent with each other       .

### The defendant shall comply with all of the following conditions:

The defendant shall report to the probation office in the district to which the defendant is released within 72
hours of release from the custody of the Bureau of Prisons.

## A.   STATUTORY CONDITIONS OF SUPERVISED RELEASE

1)  The defendant shall not commit any federal, state or local crime.
2)  In any felony case, the defendant shall not possess a firearm or ammunition as defined in 18 U.S.C. §921.
3)  The defendant shall not illegally use or possess a controlled substance.
4)  The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic
drug tests thereafter, as directed by the probation officer.
   ☐  The above drug testing condition is suspended based on the court's determination that the defendant poses a low
risk of future substance abuse.  (Check, if applicable.)
5)  Pursuant to Pub. Law 108-405, Revised DNA Collection Requirements Under the Justice for All Act of 2004, if
applicable, the defendant shall cooperate in the collection of DNA while incarcerated in the Bureau of Prisons, or as
directed by the probation officer.
6)  If this judgment imposes any criminal monetary penalty, including special assessment, fine, or restitution, it shall
be a condition of supervised release that the defendant pay any such monetary penalty that remains unpaid at the
commencement of the term of supervised release in accordance with the Schedule of Payments set forth in the Criminal
Monetary Penalties sheet of this judgment.  The defendant shall notify the court of any material change in the defendant's
economic circumstances that might affect the defendant's ability to pay restitution, fines, or special assessments.

## B.   STANDARD CONDITIONS OF SUPERVISION

1)  The defendant shall not leave the judicial district without the permission of the court or probation officer;
2)  The defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days
of each month;
3)  The defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;
4)  The defendant shall support his or her dependents and meet other family responsibilities;
5)  The defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training, or other
acceptable reasons;
6)  The defendant shall notify the probation officer ten days prior to any change in residence or employment;
7)  The defendant shall refrain from excessive use of alcohol;
8)  The defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;
9)  The defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any persons
convicted of a felony unless granted permission to do so by the probation officer;
10) The defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation
of any contraband observed in plain view of the probation officer;
11) The defendant shall notify the probation officer within 72 hours of being arrested or questioned by a law enforcement officer;
12) The defendant shall notify the probation officer within 72 hours of being charged with any offense, including a traffic offense;
13) The defendant shall not enter into any agreement to act as an informer or special agent of a law enforcement agency without the
permission of the court;
14) As directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's
criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to
confirm the defendant's compliance with such notification requirement.

Sheet 4 - Judgment in a Criminal Case with Supervised Release (Rev. 2/2005)

Judgment Page 4 of 6

**DEFENDANT: RICHARD JOHNSON**
a/k/a Little Richy

**CASE NUMBER: JFM-1-09-CR-00512-003**

## C.  SUPERVISED RELEASE
## ADDITIONAL CONDITIONS

1. The defendant shall satisfactorily participate in a mental health treatment program approved by the probation officer, which may include evaluation, counseling, and testing as deemed necessary by the probation officer.

2. The defendant shall satisfactorily participate in a vocational or educational program as directed by the probation officer.

3. The defendant shall register with any federal, state, and/or local sex offender registration agency in any location where the defendant resides, is employed, carries on a vocation, or is a student, as directed by the probation officer. The probation officer shall provide any and all information required by such agency, and may direct the defendant to report to that agency, in person, for additional processing, such as photographing and fingerprinting.

Sheet 5, Part A - Judgment in a Criminal Case with Supervised Release (Rev. 2/2005)          Judgment Page 5 of 6

**DEFENDANT: RICHARD JOHNSON**                    **CASE NUMBER: JFM-1-09-CR-00512-003**
a/k/a Little Richy

# CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 5B.

|  | **Assessment** | **Fine** | **Restitution** |
|---|---|---|---|
| **TOTALS** | $  500.00 | $ | $ |

☐ CVB Processing Fee $25.00

☐ The determination of restitution is deferred until _____. An *Amended Judgment in a Criminal Case* (AO 245C) will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| **Name of Payee** | **Total Loss\*** | **Restitution Ordered** | **Priority or Percentage** |
|---|---|---|---|
|  | 0 | 0 |  |
| **TOTALS** | $          0 | $          0 |  |

☐ Restitution amount ordered pursuant to plea agreement  _____

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f).  All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

☐ the interest requirement is waived for   ☐ fine   ☐ restitution.

☐ the interest requirement for   ☐ fine   ☐ restitution is modified as follows:

\* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

Sheet 6 - Judgment in a Criminal Case with Supervised Release (Rev. 2/2005)                                        Judgment Page 6 of 6

**DEFENDANT: RICHARD JOHNSON**                                    **CASE NUMBER: JFM-1-09-CR-00512-003**
a/k/a Little Richy

# SCHEDULE OF PAYMENTS

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

Payment of the total fine and other criminal monetary penalties shall be due as follows:

A   [X]   In full immediately; or

B   [ ]   $_____ immediately, balance due (in accordance with C, D, or E); or

C   [ ]   Not later than _____; or

D   [ ]   Installments to commence _____ day(s) after the date of this judgment.

E   [ ]   In _____ (*e.g. equal weekly, monthly, quarterly*) installments of $_____ over a period of _____ year(s) to commence when the defendant is placed on supervised release.

The defendant will receive credit for all payments previously made toward any criminal monetary penalties imposed.

Unless the court expressly orders otherwise, if this judgment imposes a period of imprisonment, payment of criminal monetary penalties shall be due during the period of imprisonment. All criminal monetary penalties except those payments made through the Bureau of Prisons Inmate Financial Responsibility Program, are to be made to the Clerk of the Court..

If the entire amount of criminal monetary penalties is not paid prior to the commencement of supervision, the balance shall be paid:

[ ]   in equal monthly installments during the term of supervision; or

[ ]   on a nominal payment schedule of $_____ per month during the term of supervision.

The U.S. probation officer may recommend a modification of the payment schedule depending on the defendant's financial circumstances.

Special instructions regarding the payment of criminal monetary penalties:

[ ]   Joint and Several

Defendant and Co-Defendant Names and Case Numbers (including defendant number), Total Amount, Joint and Several Amount, and corresponding payee, if appropriate.

[ ]   The defendant shall pay the cost of prosecution.

[ ]   The defendant shall pay the following court cost(s):

[ ]   The defendant shall forfeit the defendant's interest in the following property to the United States: